Good morning. May it please the court. I'm Robert Murray and I represent Nestor Henriquez-Portillo and we're here on an issue I believe that has not been decided by the courts before. The issue is whether or not the United States magistrate should have informed the defendant that he had a right to have an Article III judge select the jury. Had I had the provisions of 28.636 firmly embedded in my mind or if I'd had the statute right in front of me, I perhaps would have caught the issue when we walked into the courtroom. However, I the defendant had a right, the appellant, Mr. Henriquez-Portillo, had a right to know that he had, could have an Article III, should have had the right to have an Article III judge preside at the jury selection. So counsel, it's your position that even though neither counsel objected, the magistrate judge should have sua sponte advised the parties of their, of the requirement that they consent? Yes. In other words, the, of course, Congress has only specified certain situations where the magistrate is required to have consent, specifically in a situation where there is going to be a change of play or an admission to a revocation of a felony trial. And I believe that the Sixth Amendment rights of the appellant in this case, Mr. Henriquez-Portillo, require that he, not so much myself, but that he had be advised that he had the right to an Article III judge to select his jury. And now, counsel, do you have a case that supports the proposition that it's the party as opposed to the party's counsel that must give consent? Well, Your Honor, I don't have a case, but I believe that, that, that the case, the cases seem to indicate that if an attorney gives consent, then that's sufficient. But in this case, there's no consent at all. Could we say that there is implied consent from the failure to object and going proceeding with the voir dire? Your Honor, I believe it takes a great deal of legal gymnastics to arrive at the point where one can conclude that there's implied consent in a situation like this. This is such a crucial Sixth Amendment issue that, that I don't believe that consent can be implied. And I was cited to the, to the court in a supplemental citation, something that I believe is significant in this regard in answering your question. I argued in my case that this was plain error. However, I, I, in my prejudice, specific prejudice in this case, I've cited to the court the case of Nagoyan v. United States, which is a United States Supreme Court case. And I think that that case presents a factual situation which is most similar to what we have here. In that case, What's the case you're talking about? Nagoyan v. United States. It's a United States Supreme Court case, 2003. Did you have that in your brief? It was, it was in my supplemental citation, Your Honor. All right. And in that case, it involved this court, in fact. Nguyen v. United States.  Nguyen. Nguyen. Nguyen v. United States. Nguyen. That's how you pronounce that. It's Nguyen, like W-E-N, but that's how it's pronounced. That's why it wasn't. I'm sorry. It's a Vietnamese. Yeah. I won't argue with the court about how it's pronounced, but. Well, we have a judge on the court with that name, so we have it on pretty good authority. I understand. That's how you pronounce it. The point, the point is, Your Honor, that in that case, this court sat on a, on an appeal with two Article III judges and an Article IV judge, I think from the, some island somewhere. It was an Article IV judge who had the right to sit for only 10 years. Now, nobody in that case, including the appellant, objected to the fact that there weren't three Article III judges sitting on the bench. And that issue was raised the first, first time on a petition for writ of certiorari before the United States Supreme Court. And the Supreme Court said, even though the issue was not raised at the, in the Court of Appeals level, that it was not proper for, for the court to sit with two Article III and an Article IV. That's, that's correct. And there was a dissent. I, I'm quite familiar with, I lived through that. But the problem, it seems to me that is different because that was a question of, of, of nothing being said and of there not being enough judges on the bench. I, you could consent to, you could have consented to this procedure, whereas, as I understood it in, in that case, there couldn't have really been a consent. Well, Your Honor, the way I read the case. Do you read it that, that they could have consented? I, I, I, yes, I read the case that they could have consented. I mean, we. You're saying you could consent to a non-Article III judge sitting on a Court of Appeals panel? Judge, I think that, that, that, that's what the case, the case holding seems to indicate. I mean, I think it's, it's an analogous situation. I think it holds the opposite. Pardon? I think it holds the opposite. I think that's what the dissent said. Yeah. The, the issue in the, in the district court in Arizona was whether or not the judge, I think, had to at least advise the defendant, the appellant in this case, that he had a right to have an Article III judge sit. None of the cases, I think the cases cited by the government really are of no moment when it comes to supporting their position. They, they cite Peretz, they cite Gomez. None of these cases deal with the issue of whether or not a, there, there was no information provided, no advisement. This is almost, doesn't it seem like invited error? The, the, sit there and have the magistrate conduct the proceedings. And then if you lose the trial, you raise on appeal that the, that the magistrate shouldn't have done it. And the system shouldn't, shouldn't work that way. Well, Your Honor, I, I, pardon me. I, I, I suppose that would be the case. But I don't think the appellant needs to bear the burden of what I did or didn't do. The issue, I think. But that happens all the time. Well, I understand. But this is such a crucial situation in terms of, of, of being advised of the right to an Article III judge. You know, the fact that Congress did not specify each and every situation where, where the magistrate must advise a defendant that he has a right to an Article III judge does not mean that there are not situations where they must do it. I mean, if a, if a magistrate has to advise a defendant that he has a right to an Article III judge on a change of plea or an admission in a supervised release case, then certainly it seems to me that in, in the case of a felony case, a selection of a jury is a situation where the magistrate must advise, come out and tell in the presence of the defendant that he's got a right to this judge. And then I get to say, look, here's what the difference is. You know, if you don't want to, if you don't care, then we'll go ahead with the magistrate. But the point is, the defendant, I believe, needs to hear that. I think he's entitled to hear that. This case was even stranger in the fact that we had a bifurcation of the jury selection. This case, the magistrate came out before lunch and, and conducted jury selection. And then after lunch, the district judge came in and decided there was a problem with this one juror, which ultimately resulted in more jurors being excused, my making a motion for mistrial, which was, which was ultimately denied. So this case, I think, presents a factual situation that's different than any of the cases we've looked at here. I've not seen... Counsel, do you agree that if we review for plain error, you lose? Yes, I, I, I do agree. But that's why I've cited the, and I pronounce the... Nguyen, the Nguyen case. But in essence, you're arguing for structural error. I'm arguing that that case says that, that plain error is not the test in a case... What is the test, then? Well, in, in this case, what... If it's not plain error, you're, the only alternative you have is structural error. In, in, in this case, I, I think what the court said was that the, the prejudicial error test had to be abandoned, that the, that the test to be applied here was different. In other words, it was, when you have an issue that's so crucial as a Sixth Amendment right to a jury trial... That's structural error. That's what you're describing. Well, Your Honor... So you're asking us to apply structural error to the lack of consent for a magistrate judge. I, I believe that may be the case, Your Honor. I don't think... I don't think that we can show prejudice. Although I argue that, that's why I cited the additional, gave the additional citation to the court, because I think we're dealing with a different animal here. I, I think that, that, that this is such a crucial aspect of a felony trial, that the defendant is, is required to have the advice of the magistrate. Let's see if Judge Torreya has any questions. Judge Torreya, do you have any questions? Well, I was about to interject the structural error situation, but I guess you've covered it. But it seems to me that where there's a, in effect, I think what is being alleged here is that there's an error on the part of the lawyer in not raising it. The lawyer had twice the opportunity, because as the jury selection was bifurcated, he had an opportunity at the beginning, he had an opportunity later on when he, he did raise issues of, of, of the jury selection. What do you have to say to that? Well, during the, during the jury selection, I, I didn't make objections, which were overruled by the magistrate regarding the composition of the court. Afterwards... But not this, but not this objection. This objection was never made. I never objected to the magistrate conducting the, the, the Vordaer, that's correct. But again, I... Isn't the real issue, isn't the real issue here whether you silence, in effect, is, is an acceptance of, of, of the procedure? Had the, had the judge asked you specifically whether you agreed to the, I'm talking about the magistrate judge, whether you agreed to the procedure that was used, and you remained silent if he asked you specifically, would that be a consent? Well, Your Honor, I think the point is that, that... Well, can you just answer my question first? I don't know what I would have done. I would have... No, I... Supposedly you just remained silent. If I had had the statute in front of me, or I had studied, if I was prepared,  But you weren't. You weren't prepared. So if at that point the judge had asked you whether or not you had an objection to the magistrate judge conducting the Vordaer, and you remained silent, what would the effect have been? If they, the, the point being here is that I would have had the opportunity to discuss it with the defendant, because the defendant's got to hear it. That's the point. That's not answering the question. The question from Judge Terrio was, if at the point you were in the proceedings, the magistrate judge had asked you whether or not you had an objection to proceeding with Vordaer before a magistrate judge, and you had remained silent, what would the effect of that silence have been? Well, I think that that would have been a waiver if they, if the judge had asked. But that didn't happen. I mean, we walked in the, Mr. Colosio and I walked into the court having no idea that this was going to happen. And as I said when I commenced my argument, if I'd had 28-636 firmly embedded in my mind, or they had a statute in front of me, I'd have been quicker on my feet, quite frankly. I would have thought, well, geez, I don't know if the judge can do this or not. All right, counsel. You've exceeded your time. We understand your position. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Fred Colosio. I'm an assistant United States attorney from the District of Arizona. Before I begin, I would like to address some of the questions that the Court asked of the defense here. Were you the trial attorney? I was a trial attorney, Your Honor. And first and foremost, I would agree with the Court that plain air applies in this case. The case that defense counsel cited in this 28-J order, the Nguyen case, that case and reading that case, it held that it's impermissible for the parties, even if the parties had stipulated or consented to the panel that presided over that case, there being two Article III judges and an Article IV judge, it still would have been impermissible. A structural – it's basically a structural error case. Correct. And our position is it's plain air that applies here, and the defendant cannot demonstrate error. That he can't show prejudice. That's correct, Your Honor. And one of the last questions that the Court asked of the defendants in this case was if the magistrate judge had asked the defendant for his consent, it's our position that the record – in the record, there's no indication that the defendant would not have consented. So, clearly, there is no error here. Your Honor, this case and this issue relates to the Supreme Court case of Gonzales that left the question unanswered whether or not prejudice can be – or, excuse me, whether or not error – whether or not a defendant – the defendant's failure to object during jury selection can constitute implied consent. And this issue has – this specific issue has not been addressed by the judge. But you don't have to – you don't have to argue that, because he already said he cannot establish prejudice. That's correct, Your Honor. And he cannot. And let me add this, and I'll take any questions that the Court might have. And this would be that the circumstances in this case are somewhat similar to what the Supreme Court dealt with in rule, and that the parties here fully participated in the jury selection process that was – that was overseen by the magistrate judge without any objections. Now that the result is not what the defense expected or desired, they now challenge the authority of the magistrate judge in overseeing that proceeding. And as the Supreme Court held in rule, for – to allow a defendant to await the outcome and then, when the outcome isn't what it expected, to challenge the jurisdiction of the magistrate judge in sitting in that – in that setting would frustrate the judicial efficiency. And it's our position that if the conviction in a case such as this were reversed, that would have the effect of seriously affecting the – the fairness, integrity, and the public reputation of judicial proceedings. Judge Torreya, do you have any questions for the government? No, Madam. It appears there are no questions. Thank you, Counsel. Thank you, Your Honor. Counsel, you exceeded your time. We'll give you a minute for rebuttal if you like it. Thank you. I think the bottom-line issue in this case is whether or not my silence without the magistrate having informed the defendant that he had a right to an Article III judge can be an implied consent. And – and the fact that – this Court – the courts are, in fact, the final arbiters of what's – how Sixth Amendment rights should be protected. The fact that Congress has failed to specify that jury selection is one of the – one of the portions of a felony criminal trial where a defendant has to be advised that he's got a right to an Article III judge is not significant. What is important is what the courts decide is significant. If Congress had to decide each and every portion of the Sixth Amendment or Fourth Amendment or any other rights that a defendant might have, Congress would have been overwhelmed, I suppose, and we'd have more statutes and case law than we could deal with. So I think the court has to decide in this case that the failure of the magistrate to advise the defendant that he had a right to an Article III judge is a crucial error, and for that reason the court should reverse the ruling of the district court. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is United States v. Gomez-Gutierrez.
judges: Torruella, Schroeder, Rawlinson